UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN W. GRACE,

                                    Plaintiff,                          DECISION AND ORDER

        -v-                                                             08-CV-6006 CJS

UNITED STATES OF AMERICA,
DEPARTMENT OF VETERANS AFFAIRS,
UNIVERSITY OF ROCHESTER, and
SHOBHA BOGHANI,

                                    Defendants.
_____
UNITED STATES OF AMERICA,

                                    Third-Party Plaintiff,

        -v-

UNIVERSITY OF ROCHESTER, and
SHOBHA BOGHANI,

                                    Third-Party Defendants.

_____


APPEARANCES

For Plaintiff:                      Robert L. Brenna, Jr.
                                    Brenna, Brenna & Boyce, PLLC
                                    31 East Main Street, Suite 2000
                                    Rochester, New York 14614


For Defendant United
States of America:                  John J. Field, AUSA
                                    Office of the United States Attorney
                                    for the Western District of New York
                                    100 State Street, Room 620
                                    Rochester, New York 14614

For Defendants University
of Rochester and Shobha
Boghani:                            Eric J. Ward
                                    Ward Greenberg Heller & Reidy LLP
                                    300 State Street, Sixth Floor
                                    Rochester, New York 14614

1

## INTRODUCTION

This is an action alleging federal claims, under the Federal Tort Claims Act ("FTCA"), against the United States and the Department of Veteran's Affairs ("VA") (collectively "the United States"), and state-law claims for medical malpractice, against the University of Rochester ("U of R") and Shobha Boghani ("Boghani"). Now before the Court is a motion [#41] by the United States to dismiss the FTCA claims for lack of jurisdiction, and a motion [#25] by the U of R and Boghani for summary judgment. For the reasons that follow, the applications are granted. Boghani and the U of R are dismissed from the action, and Plaintiff's action against the United States may proceed solely as to the claim that VA employees were negligent in failing to reschedule Plaintiff's opthalmology appointment after his July 29, 2003 appointment was canceled.

## BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case. John W. Grace ("Plaintiff") is a veteran who is blind in his right eye due to "branch retinal vein occlusion" and "neurovascular glaucoma." Plaintiff alleges that his blindness could have been prevented if it was treated properly. Plaintiff maintains that Boghani, an opthalmologist working at the Rochester VA clinic, diagnosed him with retinal vein occlusion, but failed to properly treat that condition over a period of years, resulting in his blindness.

On or about October 1, 2001, the VA and the U of R's Department of Opthalmology entered into a contract ("the contract"), for the provision of medical services to VA patients. Field Aff. [#41-1], Ex. 2. The contract refers to the U of R as "the Contractor," and

2

indicates that "services to be performed by the Contractor shall be under the general direction of the [VA]." *Id*. at 2. The contract states, in pertinent part:

> It is expressly agreed and understood that his is a nonpersonal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects fo the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments. The Contractor and its health-care providers shall be liable for their liability-producing acts or omissions.

*Id*. at 6. The regulation referred to in the previous paragraph, FAR 37.101, states, in pertinent part, that "[n]onpersonal services contract means a contract under which the personnel rendering the services are *not subject*, either by the contract's terms or by the manner of its administration, *to the supervision and control* usually prevailing in relationships between the Government and its employees." 48 C.F.R. § 37.101 (emphasis added). Additionally, the contract states that while the VA could "evaluate the quality of professional and administrative services provided" under the contract, it "retain[ed] no control over the medical, professional aspects of services rendered (e.g. professional judgments.)" *Id*. at 13.[1]

The contract further states that U of R will provide opthalmology services twenty days per month, with such service divided amongst VA clinics in Rochester, New York, Bath, New York, and Canandaigua, New York. *Id*. Moreover, the contract specifies the

---

[1]While the contract indicated that the VA had the right to "evaluate the quality of professional and administrative services provided" under the contract, Boghani indicated that the U of R actually performed that function. Boghani Dep. at 180 ("The VA actually requested that the university do that. At the university there is a quality assurance officer and I think some of my notes related to the VA patients were sent to the quality assurance officer and he would monitor.")

following: clinic hours at VA facilities will be 8:00 am - 4:00 pm (*Id*. at 3); certain diagnostic procedures, which the VA is not equipped to provide, will be performed at the U of R's Strong Memorial Hospital (*Id*. at 11); the contractor will utilize the VA's medical records system and forms  (*Id*. at 12); the contractor will adhere to VA's customer service standards (*Id*.); the contractor will  "adhere to VA policies and procedures  and the regulations of the medical staff bylaws of the [VA] (*Id*. at 13); and, the VA medical director retains the right to review "the qualifications of Contractor personnel" (*Id*. at 13).

Pursuant to this contract, Boghani, who was primarily employed by the U of R as a physician and instructor, provided opthalmology services at VA's clinic in Rochester six days per month. Sharma Dep. at 76, 79, 81.  The VA determined the number of patients for which Boghani was responsible at the VA clinic. Boghani Dep. at 169.  VA clerical staff scheduled Boghani's appointments for her on the days that she worked at the VA clinic, and provided her with the list of patients to be seen each day. Boghani Dep. at 59, 130; Sharma Dep. at 82-85, 95-96.[2]   Boghani's work schedule at the VA clinic was generally determined by the VA. Boghani Dep. at 60.  However, the VA did not control when Boghani took vacation. Boghani Dep. at 199. Boghani was required to see any VA patients who needed opthalmology services. Sharma Dep. at 110-111.  Boghani was also required to adhere to general VA guidelines and policies for patient care, but there were no specific policies concerning opthalmology treatments. *Id*. at  113-116.  There was no supervising physician at the VA who exercised "control over the day-to-day performance of [Boghani's]

---

[2]Plaintiff's supervisors at the VA clinic, Dr. Babcock and Dr. Sharma, were not involved in scheduling her appointments. Sharma Dep. at 85, 95-96.

opthalmological work." Boghani Dep. at 195. Boghani's salary and benefits were provided to her by the U of R. Boghani Dep. at 187-188.

Robert B. Babcock, M.D. ("Babcock") was Chief of Staff at the Canandaigua VA Medical Facility at all relevant times. In December 2009, Babcock was deposed in this action. Field Aff., Ex. 1. Babcock stated that contract medical providers, including Boghani, were not supervised by the VA on a day-to-day basis: "These providers are licensed independent practitioners. They're not supervised on a day to day basis." Babcock Dep. at 65; *see also, id*. at 65-66 ("I'm saying she [Boghani] was not supervised on a day to day basis. She was brought on board as a contract provider to make her independent professional judgments and act upon them.")[3] Babcock further testified:

> Q. Other than her professional medical judgment[,] her schedule and the method by which she practiced was controlled by the VA, was it not?
>
> A. That's only partially true. The VA provided the support resources for scheduling. There certainly was the requirement that she see all of the patients who presented themselves for care. She did not have the discretion to say, "I don't want to see that veteran," but once [the veteran was] brought into her practice she made the determination of when the next appointment would be, how soon and what diagnostic studies and treatments would be rendered.

*Id*. at 66; *see also, id*. at 78 ("There was no one supervising Dr. Boghani's decision on the frequency of follow up including rescheduling patients in her clinic on a day to day basis."); *id*. at 104 ("Again, none of our clinicians are supervised on a day to day basis. We don't have super clinicians whose job it is to check up what is done during the day by other clinicians."). Babcock further indicated that VA staff did not review Boghani's medical

---

[3]Boghani also testified that no one at the VA exercised control over "the day-to-day performance of [her] opthalmological work." Boghani Dep. at 195.

notes. *Id*. at 101.   Babcock stated that the VA reviewed contract doctors' credentials, including their licenses and board certifications, prior to the doctors beginning work, and again every two years. *Id*. at 128, 133.   The VA mandated the number of hours that Boghani had to be available to see patients, but did not require her to see any particular number of patients per day. *Id*. at 147-148.   The VA maintained "minimalist type" equipment at its clinics, and expected that complicated procedures would be performed at U of R's Strong Memorial Hospital. *Id*. at 151 ("[T]he entire framework of the contract is let's do what we can do locally in the clinic and everything else will be directed to Strong Memorial Hospital to the eye center where it will be done there.")

Krishna Sharma, M.D. ("Sharma") was the "Lead Physician" at the Rochester and Canandaigua VA Clinics at various times during the  relevant period.  Sharma Dep. at 6-8. In that capacity, Sharma's immediate supervisor was Babcock. *Id*. at 12.  Sharma indicated that part of her responsibilities was "[t]o supervise all the physicians working under me." *Id*. at 12.   However, Sharma indicated that such supervision was general in nature: "When we supervise – we don't supervise daily if that's what you mean.  I don't go to every one's office daily and see, but I was responsible for the supervision." *Id*. at 14; *see also, id*. at 90-91 (Contract medical services were performed under the "general direction" of the VA). Sharma indicated that her supervision of physicians consisted generally of overseeing the periodic review of the physician's records (*Id*. at 14-21) and responding to any complaints received about the physicians. *Id*. at 75-76.   Sharma indicated that she never received any complaints about Boghani. *Id*.   Additionally, Sharma stated that she was not involved in reviewing Boghani's medical records, since Boghani was a specialist, and that such review

of Boghani's records, including peer review, was performed by the U of R. *Id*. at 76; *see also, id*. at 91 ("[T]he contractor, the specialty like Dr. Boghani I depended on the references from the U of R."); *id*. at 109 ("There was no opthalmologist supervisor there because there were – they were University of Rochester.").

Plaintiff was seen by Boghani at the Rochester VA clinic, concerning his right eye, on October 24, 2002, February 6, 2003, and March 28, 2003. Plaintiff was given an appointment to return to see Boghani on July 29, 2003, however, the VA cancelled the appointment. Boghani indicates that she was on vacation on July 29, 2003. Boghani Dep. at 145. The VA clinic had a policy of rescheduling appointments when they were missed by the patient or canceled by the VA. Plaintiff's follow-up appointment with Boghani, though, was not rescheduled.

More than one year later, on August 27, 2004, Plaintiff went to the VA medical facility, complaining of pain in his right eye. Because Boghani was not available, a VA Physician's Assistant scheduled Plaintiff to see a private opthalmologist, Dr. Williams ("Williams"), at Rochester Eye Associates, on an emergency basis. Williams diagnosed Plaintiff with neovascular glaucoma, and determined that Plaintiff was blind in his right eye. Williams performed a laser surgical procedure on Plaintiff's right eye, and subsequently saw Plaintiff for an unspecified number of follow-up visits. The VA declined to pay for additional treatment by Williams, since it had already contracted with Boghani to provide opthalmology services.

Subsequently, on May 24, 2005 and July 12, 2005, Plaintiff received additional treatment from Boghani. Boghani Dep. at 175. Boghani also made a change to Plaintiff's

prescription on July 27, 2005. *Id*.

On June 6, 2006, approximately one year after Boghani's final appointment with Plaintiff, Plaintiff learned that his blindness was preventable. Thereafter, on August 9, 2006, Plaintiff filed an administrative claim against the VA. Field Aff., Ex. 5 (Form SF-95). The claim alleged that Plaintiff's right-eye blindness was "preventable, but for the Malpractice of the VA Medical Centers and their agents, employees, servants, and assigns." *Id*. In that regard, Plaintiff's claim stated, in pertinent part:

> As a result of Dr. Shobha Boghani's failure to diagnose and adequately treat the claimant in accordance with the standard of care, claimant suffers from blindness in his right eye.
>
> Claimant suffered total, complete, and irreversible blindness in his right eye as a result of the negligence and Medical Malpractice of the VA Medical Centers and their agents, employees, servants, and assigns, including but not limited to Dr. Shobha Boghani's negligence and failure to adequately assess and diagnose the Claimant, failure to follow up with the claimant despite knowledge of his history of retinal vein occlusion, failure to adequately monitor and administer appropriate medications, and failure to formulate and execute an appropriate treatment plan.

*Id*. On November 2, 2006, the VA notified Boghani that Plaintiff had filed an administrative claim alleging malpractice that she committed. Boghani Dep. at 5, 25. The notice directed Boghani not to discuss the claim with anyone outside the VA, and Boghani did not notify the U of R of the claim. On April 10, 2008, the VA denied the claim.[4]

On January 3, 2008, Plaintiff commenced this action against the United States and the VA, pursuant to the FTCA. Plaintiff's original Complaint [#1] alleged that, "Defendants and their employees and agents, in . . . treating or failing to treat plaintiff deviated from

---

[4]The VA denied the administrative claim three months after Plaintiff commenced this action.

standard and approved practice in the medical community." Complaint [#1], ¶ ¶ 5, 9. The Complaint did not refer specifically to Boghani by name. Instead, it alleged that the "Defendants and their employees and agents" were negligent. In September 2008, Boghani received a Notice of Deposition in this lawsuit. Boghani Dep. at 25. Until Boghani received such notice of her deposition, she did not know that Plaintiff had commenced a lawsuit. Boghani Dep. at 25. Upon receiving this notice, Boghani notified the U of R and her malpractice carrier of the lawsuit. Boghani Dep. at 24. Prior to that, the U of R had no notice of either the administrative claim or the lawsuit.

On October 7, 2008, the United States filed a motion [#12] for leave to commence a third-party action against Boghani and the U of R. As part of the application, the United States indicated that Boghani was an employee of the U of R who merely provided contract medical services to VA patients. Plaintiff consented to the application. On December 12, 2008, the Court granted leave for the United States to commence the third-party action.

On May 22, 2009, Plaintiff filed an Amended Complaint [#21], adding Boghani and the U of R as defendants. The Amended Complaint contends, in pertinent part:

> The hospitals operated by [USA and VA] employ, among others, doctors, nurses, interns, residents, nurses aides and other hospital personnel over which it exercises exclusive control and supervision with the right to employ and discharge such employees.
> ***
> [D]efendants failed to properly monitor and/or treat John W. Grace for known complications of branched retinal vein occlusion in a timely fashion.
> Defendants and their employees and agents, in so treating and failing to treat plaintiff, deviated from standard and approved practice in the medical committee.
> ***
> As a result of the carelessness, negligence and gross negligence and malpractice of the agents and employees of defendants, as described above, Plaintiff has suffered [injury].

***

> Defendant USA and defendant VA are vicariously liable for the negligence and medical malpractice of the health care providers, including but not limited to defendant Boghani[.]

Amended Complaint ¶ ¶ 5, 8, 9, 12, 31.

On June 11, 2009, Boghani and the U of R filed the subject motion for summary judgment [#25]. The movants contend that Plaintiff's claims against them, which are state-law malpractice claims governed by the substantive law of the State of New York, are barred by the applicable statute of limitations. Specifically, movants maintain that the claims against them were not commenced within two years and six months, as required by § 214-a of the New York Civil Practice Law and Rules ("CPLR"), which governs medical malpractice claims. Boghani and the U of R further argue that Plaintiff's claims against them do not "relate back" to the filing of Plaintiff's original complaint against the United States and the VA, since the parties are not united in interest, and since neither Boghani nor the U of R knew of Plaintiff's lawsuit until September 2008. Additionally, Boghani and the U of R contend that, even if the claims did relate back, the statute of limitations was not tolled by the "continuous treatment doctrine," since there was an almost-two-year-gap in the treatment that Plaintiff received from Boghani, between March 28, 2003 and May 24, 2005, during which Plaintiff received treatment from Williams.[5]

On October 13, 2009, Plaintiff filed sworn responses to the United States' Second

---

[5] Apparently Plaintiff was not actually receiving opthalmology treatment from Williams during much of that period. After his appointment with Boghani on March 28, 2003, Plaintiff did not see any opthalmologist for almost seventeen months, until August 27, 2004, when he went to the VA complaining of eye pain, and was referred to Williams, a private physician, since Boghani was not available. Of course, Plaintiff blames that gap in treatment on the VA's failure to reschedule an appointment for him with Boghani, after it canceled his July 29, 2003 appointment. The extent of Williams' treatment is unclear, since his notes are not part of the record, and since Plaintiff's recollection of such treatment is vague.

Set of Interrogatories.  When asked to identify each person who was negligent, Plaintiff identified Boghani as "the only natural person plaintiff knows to be negligent" "[a]t present time." Field Aff., Exhibit 8.  The interrogatory response identified various alleged deviations from the standard of care by Boghani, including the failure to conduct testing and  monthly follow-up examinations.

On November 10, 2009, Plaintiff was deposed in this action.  At his deposition, Plaintiff was asked questions about his theory of liability, and he indicated that Boghani was negligent in treating him. Pl. Dep. at 86.  He further indicated that the "focus of [his] lawsuit [was] on Dr. Boghani's handling of [his] care." *Id*.  When asked if he was claiming that anyone else working at the VA had been negligent, Plaintiff responded in the negative:

> Q. Just generally, other than Dr. Boghani, are you claiming that anybody else at the VA made a mistake or was somehow careless in treating you with respect to your right eye condition.
>
> MR. BRENNA: [Plaintiff's attorney]: Objection.
>
> THE WITNESS: No, I'm not.

Pl. Dep. at 88.  Plaintiff's attorney stated, however, on the record, that he was alleging a broader theory of recovery.  *Id*.  Specifically, he referred to an alleged lack of supervision over Boghani by VA officials, and a lack of "coordination of the clinic." *Id*. at 88-89.  In response to such statement by Plaintiff's attorney,  the attorney for the United States stated that he "appreciated" counsel's clarification, and the following questions and answers took place:

> Q. My intent here is not to ask tricky questions.  I'm just trying to find out what the scope of your contentions are in this litigation.  You lawyer mentions that he – you know, as a matter of legal theory he has indicated there may be a claim for negligent supervision of Dr. Boghani's handling of your care.

A. Okay.

Q. Do you agree with that –

A. Yes, I do.

Q. – statement?

A. Yeah.

*Id*. at 89.  When asked why he believed that, Plaintiff stated his belief that VA officials must

have been monitoring Boghani's work. *Id*. at 90 ("[S]omebody must have been reviewing

what she did I would think.").  Later during Plaintiff's deposition, the following exchange

took place:

Q. Another point that your lawyer brought up was a coordination of care issue.  What evidence  are you aware of or do you know about that there was a failure in the VA to coordinate your care properly?

MR. BRENNA: Beyond what he's testified to?

MR. FIELD:  Well, yes, beyond what –

THE WITNESS: I'm not sure I totally understand what you mean by coordination of care.  You mean like being referred, is that it or –

Q. Well, is it the situation where somebody at the VA – the left hand didn't know what the right hand was doing essentially?

A. Oh, absolutely.

*Id*. at 99.   Plaintiff also indicated that he thought there was a lack of coordination of his

treatment between Boghani and his vascular surgeon. *Id*. at 100-102.  Plaintiff further

testified:

Q. Other than the failure to coordinate between the vascular surgeons and Dr. Boghani, are there other areas where you think there was a lack of coordination?

12

A. I don't know.

Q. I'm just asking for your understanding.

A. No. On her part?

MR. BRENNA: Form.

Q. Yes. Or anybody else's part for that matter. Let's start with other people. Are other people responsible for poor coordination of your care other than Dr. Boghani?

A. I don't really see that. I don't think.

MR. BRENNA: Form.

THE WITNESS: Being, you know, I'm not a doctor, what do I know?

*Id*. at 103-104.

On December 3, 2009, Plaintiff filed an "Amended Response to USA's Second Interrogatories." Field Aff. Ex. 9. The Amended Response vastly expanded Plaintiff's theory of negligence by the VA – the original interrogatory response consisted of slightly more than four pages, while the amended response was almost eleven pages. The amended response stated that, in addition to Boghani's negligence, there had been

> a systems failure within and throughout the [VA] in a failure to coordinate patient care, failure to ascertain and determine that there was an inability for Dr. Boghani to access various records, necessary for the complete treatment of John Grace. . . . There was a general systems failure . . . to coordinate supervisory personnel at virtually every level . . . There was additional supervisory failure by various individuals throughout the administration of the VA . . . . Additionally, there were system failures in that [VA employees other than Boghani] did not each actively participate to the extent necessary to assure that adequate notice was given to John Grace when appointments were scheduled [or cancelled.] . . . Additionally, there was no system in effect to adequately review a patient's chart . . . the computer system in effect did not allow all caregivers adequate access to other entries . . failure to coordinate the transition of primary care from Dr. Mary Matthew to James Siegriest, PAC . . . failure to adequately train and supervise James Siegrist,

13

PAC . . . failure to train, supervise, review and coordinate all healthcare providers and support staff . . .

*Id*.

On November 18, 2009, counsel for the parties appeared before the undersigned for a settlement conference, which the Court scheduled at the request of Plaintiff's counsel. Following the conference, the Court held the summary judgment motion in abeyance, to allow the parties the opportunity to complete additional discovery. Subsequently, the parties conducted such discovery.

In the meantime, on May 4, 2010, the United States filed the subject motion to dismiss for lack of jurisdiction [#41]. In that regard, the United States seeks dismissal of all claims against the United States/VA, on the theory that Plaintiff's claims of negligence are solely against Boghani and the U of R, and are therefore barred by sovereign immunity. On this point, the United States relies on Plaintiff's initial sworn response to the United States' Second Set of Interrogatories, in which Plaintiff indicated that Boghani was the only person alleged to have been negligent. The United States maintains that Plaintiff is estopped, by such response, from expanding his theory of liability, as set forth in his amended interrogatory response. The United States further indicates that any claims besides those against Boghani and the U of R were not contained in Plaintiff's administrative complaint, and are therefore unexhausted. Having framed Plaintiff's claims in this manner, the United States contends that it has sovereign immunity against such claims, since Boghani was not an employee of the VA, within the meaning of the FTCA.

On October 14, 2010, counsel for the parties appeared before the undersigned for oral argument of Boghani's and U of R's motion for summary judgment and the United

States' motion to dismiss.

DISCUSSION

*The United States' Motion to Dismiss*

The United States maintains that Plaintiff's claims involving Boghani and the U of R are barred by sovereign immunity, since such claims cannot be maintained under the FTCA. The United States contends that Boghani was not an employee of the U.S. within the meaning of the FTCA, but was an independent contractor.

The United States' motion is brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"). With regard to such an application, it is well settled that,

> [a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000) (citations omitted).

It is clear that a party opposing a motion to dismiss may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *See, Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (citations omitted). This principle applies to motions for summary judgment and motions to dismiss for lack of jurisdiction. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir.

2000) ("The *Perma Research*[6] principle . . . is pertinent not only to summary judgment on the merits of a claim or defense but also to the resolution of preliminary questions of jurisdiction[.]").

The first issue for the Court to consider is whether Boghani was an employee of the United States, or an independent contractor. The legal principles on this point are clear:

> The FTCA is a limited waiver of sovereign immunity making the Federal Government liable to the same extent as a private person for certain torts of employees of the government acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2671. The Act defines "employee of the government" to include "officers or employees of any federal agency, members of the military or naval forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity...." *Id*. § 2671. The FTCA waiver of sovereign immunity, however, does not extend to independent contractors.
>  . . . Whether a person is a government employee or an independent contractor is a question of federal law.

*Leone v. U.S.*, 910 F.2d 46, 48 -49 (2d Cir. 1990) (citation omitted), *cert den.* 499 U.S. 905, 111 S.Ct. 1103 (1991). "[T]he strict control test, as well as principles of agency, govern this inquiry." *Id*., 910 F.2d at 49.

The strict control test requires consideration of whether the United States has the authority "to control the detailed performance of the contract." *Leone v. U.S.*, 910 F.2d at 49 (citation omitted); *see also, Logue v. U.S.*, 412 U.S. 521, 527, 93 S.Ct. 2215, 2219 (1973) ("[T]he distinction between the servant or agent relationship and that of independent contractor turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract.").

---

[6] *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

The strict control test is not satisfied merely because a doctor provides medical services pursuant to detailed federal guidelines. For example, in *Leone*, the Second Circuit held that the United States was not liable for the acts of private doctors who performed medical examinations of pilots on behalf of the Federal Aviation Administration ("FAA"). As to the strict control test, the Second Circuit in *Leone* stated:

> Confronting the strict control test, plaintiffs-appellees nonetheless argue that the [examiners] are employees of the FAA. In particular, they emphasize that the FAA provides the [examiners] with detailed guidelines for conducting medical exams and requires the use of specific equipment and examination techniques. The FAA regulations also set forth the medical standards the [examiners] must apply in assessing each applicant for certification. Further, each [examiner] acts under the Federal Air Surgeon's general supervision, *see* 14 C.F.R. § 183.21(b), and the FAA continuously evaluates the [examiners].

> The plaintiffs-appellees, however, fail to appreciate that such detailed regulations and evaluations are an insufficient basis to satisfy the strict control test. The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government. Thus, while the FAA acts generally as an overseer, it does not *manage the details of an [examiner's] work or supervise him in his daily duties*. Indeed, neither the supervision provided by the Federal Air Surgeon nor the FAA procedures to evaluate the [examiners] entail *on-site review or day-to-day management*. Accordingly, the FAA does not maintain the type of control over the [examiners] that is required by [the strict control test].

*Leone v. U.S.*, 910 F.2d at 49-50 (citations omitted, emphasis added).

In addition to the strict control test, the Court must consider other principles of agency. *Leone v. U.S.*, 910 F.2d at 49. In that regard,

> in determining whether one acting for another is an employee or independent contractor, the following relevant factors are to be considered: the extent of control which, by agreement, the master may exercise over the details of the work; whether or not the one employed is engaged in a distinct occupation or business; the kind of occupation, with reference to whether the work is usually done under the direction of the employer or by a specialist without

supervision; the skill required in the particular occupation; whether the employer or the workman supplies the instrumentalities, tools and the place of work; and the method of payment, whether by time or by the job.

*Id*. at 50 (citation omitted). Medical specialists "usually work without supervision," and "[t]he performance of their duties clearly requires special skill and training." *Id*.

Applying the applicable principles of law to the facts of this case, the Court finds that Boghani and the U of R were independent contractors. First, the Court finds that under the strict control test, the United States did not control Boghani's day-to-day activities at the VA clinic. It is true that the VA directed when and where Boghani would work, scheduled her appointments, and provided general guidelines for her to follow in performing her work. Boghani was required to see all VA patients who presented themselves for opthalmology treatment, and to use the VA's medical record system. Boghani also used the VA's basic medical equipment, unless more specialized equipment was needed, in which case she used equipment at the U or R. However, no one at the VA supervised Boghani's work on a day-to-day basis. For example, while Sharma provided general supervision of doctors at the VA clinics, she had very little interaction with Boghani, since she never received any complaints about Boghani, since she was not familiar with Boghani's specialty, and since quality control of Boghani's work was performed by the U of R. On these facts, the Court finds that the VA exercised less control over Boghani's work than the FAA exercised over the doctors in the *Leone* case, who were held to be independent contractors.[7] *See, Leone*

---

[7] *See, Leone v. U.S.*, 715 F.Supp. 1182, 1187 (E.D.N.Y. 1989) ("Through its demanding and detailed regulations, the FAA dictates virtually every action the AME should undertake during the examination, specifies the particular information that should be elicited from the pilot applicants, and explicitly sets forth the medical standards the AME must apply in assessing the information and in deciding whether to issue or deny a certificate. The Court wonders what greater degree of control could be exercised over AMEs, unless an FAA official literally sat in the examination rooms, either prompting the AME to ask a question he or she might

*v. United States*, 910 F.2d at 50 ("[D]etailed regulations and evaluations are an insufficient basis to satisfy the strict control test. The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government.").

General principles of agency also indicate that Boghani was an independent contractor. The VA did not exercise control over the details of Plaintiff's work, nor could it, since Plaintiff's VA supervisors were not familiar with opthalmology. Boghani was engaged in a distinct, highly-skilled and specialized occupation, opthalmology, which she performed without day-to-day supervision by VA officials. Additionally, Boghani's pay and benefits were provided by the U or R. All of these factors indicate that Boghani was an independent contractor. While the fact that the VA provided the place of work, as well as tools, for the most part, weighs in favor of finding that Boghani was the VA's agent, consideration of all relevant factors leads the Court to conclude that Boghani was an independent contractor.

Plaintiff argues to the contrary, relying on cases such as *Tivoli v. United States*, No. 93-CIV-5817-CLB-MDF, 1996 WL 1056005 (S.D.N.Y. Sep. 27, 2006) ("*Tivoli*"), *aff'd* 164 F.3d 619 (2d Cir. 1998) (table), and *Williams v. United States*, No. 03 Civ. 9909 (GEL), 2007 WL 951382 (S.D.N.Y. Mar. 22, 2007) ("*Williams*"). However, the Court finds that the *Tivoli* case is factually unique, and inapposite to the instant case. Similarly, the facts of the *Williams* case are different than those found here. For example, unlike Boghani, the

---

forget to ask, or holding the stethescope as the AME listened to an applicant's heartbeat."), *reversed*, 910 F.2d 46, 50 (2d Cir. 1990) ("[W]hile the FAA acts generally as an overseer, it does not manage the details of [the doctor's] work or supervise him in his daily duties.").

doctor in *Williams* was required to provide specific medical services to every patient, and was required to perform all services at the Bronx VA Clinic. *See, Williams*, 2007 WL 951382 at *12 ("Bronx VA required Dr. Schonholz to provide a GYN exam, pap smear, and breast exam. In addition, the contract required Dr. Schonholz to provide his services at Bronx VA, and to perform all elective major/minor surgery at Bronx VA.") (citations and internal quotations omitted). The Bronx VA also "controlled" Dr. Schonholz's vacation time, and most significantly, "what he did during [his work] hours." *Id*. at 12. In any event, to the extent that *Williams* may be inconsistent with the Court's decision today, the Court declines to follow *Williams*.[8]

Plaintiff also argues that the United States should be estopped from denying that Boghani was an employee. On this point, Plaintiff contends that the United States should have promptly informed him that Boghani was an independent contractor in response to his administrative complaint. Alternatively, Plaintiff argues that the United States should have disclosed Boghani's employment status as part of its Answer to the original Complaint in this action, although, as noted earlier, the original Complaint did not mention Boghani by name. As to this position, Plaintiff suggests that the United States waited until the

_____

[8]Another dissimilarity is that *Williams* involved a summary judgment motion, not a motion under Rule 12(b)(1). The Court in *Williams* denied the Government's summary judgment motion, finding that "a reasonable factfinder could conclude that Dr. Schonholz qualifies under the FTCA as an 'employee' of Bronx VA as a matter of law." Consequently, the *Williams* Court did not decide that the doctor was in fact an employee of the VA, but instead, decided that there were triable issues of fact. The instant motion is brought pursuant to Rule 12(b)(1), pursuant to which this Court must resolve issues of fact involving the Court's jurisdiction. In certain cases, "[w]here jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment," and should "dismiss such a claim for lack of jurisdiction only if there are no triable issues of fact." *London v. Polishook*, 189 F.3d 196, 198 -199 (2d Cir. 1999) (citation omitted). The instant case does not present such a situation. The merits of Plaintiff's claim primarily involve the question of whether Boghani deviated from the standard of care, not whether she was an employee of the VA.

statute of limitations had run on Plaintiff's malpractice claim before informing him that Boghani was not a VA employee. Pl. Memo of Law [#49] at 12. Plaintiff further maintains that the United States should be estopped from arguing that Boghani was not an employee, since it reasonably appeared to Plaintiff that Boghani was a VA employee. *Id*. However, the doctrine of equitable estoppel cannot be applied against the United States, "except in the most serious of circumstances," which are not present here. *U.S. v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982); *see also, Gildor v. U.S. Postal Service*, No. 05-4282-cv, 179 Fed.Appx. 756, 760, 2006 WL 1228691 at *3 (2d Cir. May 3, 2006) ("[E]quitable estoppel cannot be used against the government unless there has been a showing of affirmative misconduct by the government."). There is no indication that the United States engaged in inequitable conduct. In particular, the United States/VA never concealed the fact that Boghani was employed by the U of R. Moreover, Plaintiff was aware that Boghani was employed at the U or R long before he commenced this action. Pl. Dep. at 91-92.[9] In fact, Plaintiff complained that Boghani was frequently late for appointments at the VA because she was delayed at U of R's Strong Memorial Hospital. *See*, Pl. Dep. at 60. Equitable estoppel therefore does not apply.

For all of the foregoing reasons, the Court finds that the United States' motion to dismiss for lack of jurisdiction must be granted, to the extent that Plaintiff's FTCA claims are based on the alleged negligence of Boghani and/or the U or R.

---

[9]Pl. Dep. at 91-92 "She [Boghani] would not return my phone calls over the reactions I was having. I then called – because one of the people [at the VA clinic] said to me, 'Well, she's at the University of Rochester,' and I said, 'oh,' and they said, 'Yes, she a doctor at the U of R,' and I said, 'Okay,' and they said, 'If you call U of R opthalmology may be you can get her.' I called U of R opthalmology and I got . . . a Dr. Williams and I started explaining my situation. I said, 'Look, it's not your problem because I'm with the VA,' and he said, 'Well, it is our problem because Dr. Boghani is also on staff here[.]'"

Beyond this, though, the United States maintains that *all of Plaintiff's claims* are based on the alleged negligence of Boghani and/or the U or R, and it therefore seeks the dismissal of *all* FTCA claims.[10]  In response to the United States' motion, Plaintiff does not expressly argue that his FTCA claims should go forward, even if Boghani and the U or R are dismissed from the case.[11]  As discussed above, however, Plaintiff's claims against the United States, as set forth in  his administrative claim and in his pleadings, are not as narrow as the United States suggests.   Instead, Plaintiff's pleadings purport to assert claims against VA "health care providers, including but not limited to defendant Boghani[.] *See*, Amended Complaint ¶ 31.

The United States insists that Plaintiff is estopped, by his original interrogatory response, from pursuing claims against anyone associated with the VA, besides Boghani. However, the Court disagrees.   The Second Circuit has not ruled that interrogatory responses are binding judicial admissions, although some district courts have so held. *See, e.g.,  Medical Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC*,  No. 05 Civ. 8665(GEL), 2008 WL 4449412 at  *11 (S.D.N.Y. Sep. 30, 2008) ("[I]n this Circuit, contention interrogatories are treated as judicial admissions 'that generally stop the answering party from later seeking to assert positions omitted from, or otherwise at

---

[10]*See, e.g.*, the United States' Memo of Law [#41-4] at 24 (Arguing that Plaintiff's "complaint against the United States should . . . be dismissed in its entirety, with prejudice, for want of subject matter jurisdiction.")

[11]Plaintiff does, however, allude to the fact that he is asserting claims against the VA that are separate from his claim arising from Boghani's alleged malpractice. *See, e.g.*, Pl. Memo of Law [#49] at 10 (Stating that his administrative claim "target[ed] *both* the [VA] and Dr. Boghani.") (emphasis in original); *see also, id*. at 11 ("The [VA] could have, and . . . should have timely denied at least *that portion of Mr. Grace's claim pertaining to its current argument about Dr. Boghani's status* as a DVA employee." [sic] (emphasis added).

variance with, those responses.'" (*quoting Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 1999 WL 672902, at * 2 (S.D.N.Y. Aug. 27, 1999)); *see also, Guadagno v. Wallack Ader Levithan Assocs.,* 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997) (Observing that interrogatory responses are generally treated as judicial admissions, and that "[a] judicial admission is conclusive, unless a court allows it to be withdrawn[.]"), *aff'd* 125 F.3d 844 (2d Cir. 1997) (table), *cert. den.* 522 U.S. 1122, 118 S.Ct. 1066 (1998).  However, the Advisory Committee's notes to Rule 33(b) indicate the opposite:

> The general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof.  Although in exceptional circumstances reliance on an answer may cause such prejudice that the court will hold the answering party bound to his answer, the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on such reliance.  The rule does not affect the power of a court to permit withdrawal or amendment of answers to interrogatories.

Advisory Committee Note of 1970 to Amendment of FRCP Rule 33, MOORE'S FED. PRACTICE 3d, § 33 App. 03 [2] (2010).

In this case, the Court observes, first, that Plaintiff's interrogatory response was given on October 13, 2009, prior to any depositions in this case of which the Court is aware.  Additionally, Plaintiff's response was conditional: "*At present time*, the only natural person plaintiff knows to be negligent is defendant/third-party defendant Dr. Shobha Boghani." (emphasis added).  Moreover, as discussed above, the United States/VA learned of Plaintiff's more expansive theory of liability during Plaintiff's deposition in

November 2009, which was only one month after Plaintiff's interrogatory response.[12]

Furthermore, Plaintiff amended his interrogatory response the following month, December

2009. Consequently, it does not appear that the United States was prejudiced. For these

reasons, the Court declines to find that Plaintiff is estopped from pursuing theories of

liability under the FTCA that were not contained in his original interrogatory response.

The United States further argues that Plaintiff cannot pursue an FTCA claim

involving anyone other than Boghani/U of R, because his administrative complaint was

limited to a claim involving Boghani. In that regard, the United States contends that an

FTCA claim involving anyone besides Boghani would be barred for failure to exhaust

administrative remedies.[13] *See*, Memo of Law [#41-5] at 2, 11-13 ("The Claim, in short,

identifies Dr. Boghani – and only Dr. Boghani – as negligent[.]"). The Court agrees with

the United States, in part.

The United States is correct that Boghani was the only individual identified by name

as being negligent in the administrative complaint. However, the complaint also refers to

"the negligence and medical malpractice of the VA Medical Centers and their agents,

employees, servants, and assigns, including but not limited to Dr. Shobha Boghani's

---

[12]The United States suggests that Plaintiff amended his interrogatory answer, in response to comments, made by the Assistant United States Attorney at a conference with the Court on November 18, 2009, indicating that Boghani was an independent contractor. (United States' Memo of Law [#41-5] at 14-15). However, by that date, Plaintiff had already indicated, at his deposition on November 10, 2009, that he believed that others at the VA were negligent besides Boghani.

[13]"To bring suit in federal court, a person seeking damages under the FTCA must exhaust all administrative remedies by filing a claim with the relevant administrative agency." *Delano v. U.S.*, No. 08-CV-610C, 2010 WL 3386835 at *2 (W.D.N.Y. Aug. 25, 2010) (citations omitted). "This requirement is jurisdictional and cannot be waived." *Accolla v. U.S. Government*, No. 09-3957-pr, 2010 WL 2511566 at *1 (2d Cir. Jun. 18, 2010) (*citing Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir.2005)).

negligence." Def. Motion to Dismiss, Ex. 5. And, significantly, the VA's written decision denying the administrative claim indicates that Plaintiff's claim was not limited to Boghani: "Please be advised that this constitutes final administrative action on the claim of Mr. Grace against the United States . . . arising from the alleged malpractice by *employees* at the VA Rochester Outpatient Clinic in failing to properly diagnose and treat neurovascular glaucoma[.]" Pl. Supplemental Response to Motion to Dismiss, Exhibit 7 (emphasis added).[14] Consequently, it appears that the VA had notice that Plaintiff's claim was not limited solely to Boghani.

Nonetheless, Plaintiff's administrative complaint clearly did not give the VA adequate notice of most of the claims that he references in his amended interrogatory response. *See, Romulus v. U.S.*, 160 F.3d 131, 132 (2d Cir. 1998).[15] For example, the administrative complaint did not give the VA notice of claims involving "a systems failure within and throughout the [VA]," "a failure to coordinate supervisory personnel at virtually every level," a failure "to coordinate the transition of primary care from Dr. Mary Matthew to James Siegrist, PAC," or "additional supervisory failure by various individuals throughout the administration of the VA." Such claims are so broad that they encompass virtually every aspect of the VA's medical operations. Instead, Plaintiff's administrative claim discusses a discrete instance of alleged medical malpractice, which would not have

---

[14] The decision was purportedly drafted by the VA's Regional Counsel.

[15] "In this Circuit, a Notice of Claim filed pursuant to the FTCA must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth. A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims. [T]he mere act of filing a SF 95 does not necessarily fulfill the presentment requirement of § 2675(a). A claimant must provide more than conclusory statements which afford the agency involved no reasonable opportunity to investigate." *Id.* (citations omitted).

alerted the VA to the types of claims that he is now describing in his amended interrogatory response.

On the other hand, the Court finds that the administrative complaint arguably gave the VA notice of one aspect of Plaintiff's claim that does not directly involve Boghani, which is the alleged failure by VA staff to reschedule Plaintiff's appointment with Boghani, after the July 2003 appointment was canceled. As a result of such failure, Plaintiff allegedly did not receive any opthalmology treatment for an extended period of time, during which he went blind. The administrative complaint put the VA on notice of such a claim, when it stated that VA employees "fail[ed] to follow up with the claimant." Otherwise, though, the Court agrees with the United States that Plaintiff failed to exhaust his administrative remedies as to the acts of negligence alleged in his amended interrogatory response.

Therefore, the Court grants summary judgment on the FTCA claims based on alleged malpractice by Boghani and the U of R, but does not dismiss Plaintiff's action against the United States in its entirety. The only properly-exhausted claim remaining under the FTCA is Plaintiff's claim that VA staff were negligent in rescheduling his follow-up appointment with Boghani. To the extent that Plaintiff is attempting to assert additional FTCA claims based on the matters described in the amended interrogatory response, they are dismissed for failure to exhaust administrative remedies.

*U of R and Boghani's Motion for Summary Judgment*

The U of R and Boghani maintain that they are entitled to summary judgment on Plaintiff's state-law medical malpractice claims. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996). Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308

(2d Cir.1993).

Plaintiff's claim against Boghani and the U of R is a medical malpractice claim under New York State law. The statute of limitations for such a claim is two years and six months: "An action for medical, dental or podiatric malpractice must be commenced within two years and six months *of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure*[.]" New York CPLR § 214-a (McKinney 2010) (emphasis added). Plaintiff's last medical appointment with Boghani was on July 12, 2005. A few days later, on July 27, 2005, Boghani made a change to Plaintiff's prescription medication, which was the last involvement that Boghani had in Plaintiff's medical care. Accordingly, Plaintiff's malpractice claim accrued, at the latest,[16] on July 27, 2005. Plaintiff commenced this action against Boghani and the U of R on May 22, 2009, with the filing of the Amended Complaint [#21]. Consequently, Plaintiff's action against Boghani and the U of R was commenced approximately three years and ten months after the malpractice claim accrued at the latest, which is obviously well outside the limitations period.

On the other hand, Plaintiff commenced his claim against the United States/VA on January 3, 2008, which is approximately two years and five months after the malpractice claim accrued at the latest. At that time, Plaintiff believed that Boghani was an employee of the VA. In any event, since the action against the United States/VA was commenced

---

[16]The parties disagree as to whether New York's continuous treatment doctrine applies. Boghani and the U of R maintain that it does not apply, and that Plaintiff's cause of action accrued on March 28, 2003. In determining the date that the cause of action accrued at the latest, the Court has assumed that the continuous treatment doctrine applies. However, since the Court finds that the amendment does not relate back, the continuous treatment issue is moot.

within two years and six months of when the malpractice claim accrued, Plaintiff maintains that his action against Boghani and the U of R is timely, under the "relation back" doctrine.

In deciding whether the relation back doctrine applies in a case such as this, involving supplemental jurisdiction over a state law claim, the claim will be timely if it would relate back under *either* state law or federal law. In that regard, FRCP 15(c) states, in pertinent part:

**(c) Relation Back of Amendments.**

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) *the law that provides the applicable statute of limitations allows relation back;*

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) *the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment*:

(i) *received such notice of the action that it will not be prejudiced in defending on the merits; and*

(ii) *knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity*.

FRCP 15(c) (West 2010) (emphasis added). In this case, New York law "provides the applicable statute of limitations," and consequently, the claims against Boghani and the U of R will relate back to the commencement of this action if it meets either the requirements of New York's relation back doctrine or FRCP 15(c)(B)&(C).

The Court will first consider New York's relation back doctrine. The relevant legal

principle is as follows:

> Under New York's relation back doctrine, the plaintiff must show that (1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for a mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well. Parties are united in interest only where the interest of the parties in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other.

*Barclay v. Poland*, No. 03-CV-6585CJS, 2010 WL 3657664 at *6 (W.D.N.Y. Mar. 24, 2010) (citations and internal quotation marks omitted); *see also, Quiroz v. Beitia*, 893 N.Y.S.2d 70, 73 (2d Dept. 2009) ("Interests will be united only where one party is vicariously liable for the acts of the other.") (citation omitted). For the claim to relate back, the party to be added must receive actual notice of the lawsuit within the limitations period. *See, Bruns v. Village of Catskill*, 564 N.Y.S.2d 857, 858 (3d Dept. 1991) (Relation back requires that "actual notice was achieved within the limitations period.") (citations omitted); *Virelli v. Goodson-Todman Enterprises, Ltd.*, 536 N.Y.S.2d 571, 574 (3d Dept. 1989) (Finding that the third prong on New York's relation-back doctrine was satisfied: "[T]here is little doubt that Goodson had actual notice of the lawsuit within the limitations period and sustained no prejudice in preparing a defense.").

In this case, the United States/VA and Boghani/U of R are not united in interest. As discussed above, the FTCA represents a limited waiver of the United States' sovereign immunity. However, "the United States ha[s] not waived sovereign immunity with regard to vicarious liability claims." *See, Gibbons v. Fronton*, 661 F.Supp.2d 429, 432 (S.D.N.Y. 2009). Since the Court has already determined that the United States/VA is not liable for

the alleged malpractice by Boghani and the U of R, there is no vicarious liability, and the second prong of New York's relation-back test is not satisfied. Additionally, the third prong of the New York relation back doctrine is not satisfied, because it is undisputed that neither Boghani nor U of R had actual notice of *this lawsuit* until after the statute of limitations had expired. *See, Cole v. Tat-Sum Lee*, 309 A.D.2d 1165, 765 N.Y.S.2d 89 (4th Dept. 2003) (Third prong of relation-back test not met where the party sought to be added had no notice of the lawsuit until after the limitations period expired). As to that, the medical malpractice limitations period expired in or about January 2008, at the latest, and Boghani and U of R did not receive any notice of this lawsuit until September 2008, when Boghani received a deposition notice. Consequently, under New York's relation-back rule, Plaintiff's claims against Boghani and the U of R do not relate back to the commencement of this action.

Similarly, under the federal relation-back rule, Plaintiff's claims against Boghani and the U of R do not relate back. In that regard, Boghani and the U of R did not receive notice of this lawsuit, "within the period provided by Rule 4(m) for serving the summons and complaint," which is "120 days after the complaint is filed." FRCP 15(c)(1)(C); FRCP 4(m); *see also, Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1076 (2d Cir. 1993) (Observing that one of the requirements under Rule 15(c) is that the party to be added receive notice of the lawsuit within 120 days of the filing of the complaint: "Under [Rule 15(c)] an amended complaint relates back to the time of the original if the new party was aware of the action within 120 days of the filing of the original complaint."). Plaintiff commenced this action on January 3, 2008, and Boghani and the U of R did not receive notice of the action until nine

months later.

Additionally, even assuming that Boghani and the U of R had notice of this lawsuit within 120 days, Plaintiff has not shown that they would have known that their exclusion from the lawsuit was due to a "mistake concerning the proper party's identity." On this point, a "mistake" under Rule 15(c) can include a "legal mistake," in certain narrow circumstances. *Harris v. Butler*, No. 91 CIV. 6352 (SAS), 1996 WL 403053 at *1 (S.D.N.Y. Jul. 18, 1996) ("The Second Circuit has consistently held that mistake under Rule 15(c) requires a showing either of factual mistake as to the name of the party to be joined or a narrowly circumscribed class of legal mistake.") (citations omitted). For example, in *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 36 (2d Cir. 1996), the Second Circuit allowed a complaint to relate back, where the plaintiff mistakenly sued a correctional facility, in a Section 1983 action, rather than the individual corrections officers who allegedly violated his constitutional rights.[17] The Court held that the corrections officers knew or should have known that, but for the plaintiff's legal mistake, they would have been sued. *Id.* ("*Since government officials are charged with knowing the law*, any BCF [Brooklyn Correctional Facility] corrections officers who were aware[18] of a lawsuit arising out of the attack on Soto "knew or should have known" that they, not BCF, were subject to liability for the constitutional torts he alleged.") (emphasis added, citation omitted).

In this case, there is no reason to believe that Boghani would have realized that

---

[17] The plaintiff in *Soto* was not alleging that the violation occurred because of an institutional policy or custom.

[18] This language indicates that, despite being charged with knowing the law, the individual corrections officers in *Soto* would still not have been subject to relation back unless they became aware of the plaintiff's lawsuit against Brooklyn Correctional Facility within 120 days of the filing of the complaint.

Plaintiff's lawsuit against the United States/VA should have been brought against her, but for Plaintiff's mistake in believing that she was an employee of the VA. *See, Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485 (2010) ("[R]elation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge[.]").  In order for her to have had such an awareness, Boghani would have needed to be familiar with the technicalities of the FTCA and the law of agency. However, unlike the corrections officers in *Soto*, Boghani cannot be charged with knowing the law, and there is no indication that she would have had such knowledge.

Consequently, Plaintiff's medical malpractice claims against Boghani and the U of R do not relate back.  Such claims are therefore time-barred, and Boghani and the U of R are entitled to summary judgment.

## CONCLUSION

Defendants' applications [#25] [#41] are granted.  The Clerk of the Court is directed to terminate Boghani and the U of R as parties to this action.  Plaintiff's action against the United States may proceed solely as to the claim that VA employees were negligent in failing to reschedule Plaintiff's opthalmology appointment after the July 29, 2003 appointment was canceled.

SO ORDERED.

Dated:          November 3, 2010
                     Rochester, New York

                                        ENTER:

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge